IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JASON RANSON,

            Plaintiff,

v.                                              CIVIL ACTION NO.   3:12-5616

BANK OF AMERICA, N.A.,

            Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss by Defendant Bank of America,

N.A. (BANA). ECF No. 4.   Plaintiff Jason Ranson opposes the motion.   For the following

reasons, the Court **DENIES, in part,** and **GRANTS, in part,** Defendant's motion.

**I.**
**FACTUAL AND PROCEDURAL HISTORY**

On September 19, 2012, Defendant removed this action from the Circuit Court of

Putnam County based upon diversity of jurisdiction. *See* 28 U.S.C. §§ 1332 and 1441.   In his

Complaint, Plaintiff asserts that he took out a mortgage with Countrywide Home Loans, Inc. to

purchase a house in 2007.   The loan was originated pursuant to the Department of Veterans

Affairs (VA) Home Loan Guaranty Program.   Plaintiff alleges the loan "contained a contractual

guarantee by the . . . (VA), which requires—as incorporated into the contract—that Defendant

comply with regulations and laws governing VA guaranteed loans, including those regulations

governing Defendant's actions in the event of the borrower's default" as he was, and continues to

be, on active duty with the United States Army. *Compl.* at ¶5, in part.   Defendant is the current

servicer and holder of the loan.

In 2009, Plaintiff became two months behind on the loan.   Plaintiff asserts that Defendant informed him he was eligible for a loan modification and requested he submit certain documentation to have the modification finalized.   Plaintiff claims that Defendant also told him to stop making any payments as they would interfere with the finalization process.   Plaintiff states he had the means to make the two delinquent payments at that time or he could have sought refinancing or taken other actions to save his house and credit.   However, he relied upon Defendant's statements and stopped making payments, pending its assurance that he was eligible for a modification.   In fact, Plaintiff states that Defendant returned his last payment without applying it to his account.

Over the next several months, Plaintiff asserts he repeatedly submitted the documentation requested by Defendant for the modification process.   Plaintiff also contacted Defendant on a weekly basis for updates.   Plaintiff claims he was assured by Defendant it would not foreclose, and Defendant discouraged him from calling by stating it would delay finalization of the modification.   Approximately eight months after the process began, Plaintiff contends that Defendant informed him the loan would not be modified because VA loans do not qualify for assistance.   According to Plaintiff, Defendant nevertheless requested that he submit documentation for another modification.   Plaintiff states he complied with the request but, approximately six months later, Defendant again told him the modification was denied because he had a VA loan.   Defendant further told him he should vacate the property because it was going to foreclose.   Plaintiff asserts he asked Defendant if he could short sell the house, but Defendant said no and stated the only way he could save his house would be by full reinstatement.   As fourteen

months had passed since he was told to stop making payments, Plaintiff states that he could not afford to pay the full amount owed.

As a result of these alleged activities, Plaintiff filed this action, alleging five counts of action.   Count I is for breach of contract, Count II is for negligence, Count III is for fraud, Count IV is for estoppel, and Count V is for illegal debt collection.   Defendant now moves to dismiss each of the counts.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563.   In its place, courts must now look for "plausibility" in the complaint.   This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted).   Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted).   If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

-3-

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail.   In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted).   However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).   Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).   The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).   Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679   If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)).   The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## III.
## DISCUSSION

### A.
### Breach of Contract

In Count I, Plaintiff alleges that the Deed of Trust and the VA Guaranteed Loan and Assumption Policy Rider provide that "Defendant's rights upon the borrower's default are limited by Title 38 of the United States Code and any regulations issued thereunder." *Compl.*, at ¶22. According to Plaintiff, the contract also provides that Defendant must apply all payments to his account.  Plaintiff asserts Defendant breached the contract by (1) discouraging him from making payments, (2) returning his payments, (3) allowing the accumulation of arrears until it was impossible for him to reinstate the loan, (4) initiating foreclosure and failing to grant a modification after assuring him it would be granted, and (5) "failing to comply with VA regulations and guidance requiring, *inter alia*, that the Defendants [sic] consider Plaintiff for a variety [of] loss mitigation options, and provide notice of such rejection(s) in writing, prior to foreclosure." *Id.* at ¶24(d).

To avoid dismissal of a breach of contract claim under Rule 12(b)(6), West Virginia law requires: "the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp.2d 694, 714 (S.D. W. Va. 2009) (citations omitted). For a claim of breach of contract to be sufficient, "a plaintiff must allege in his complaint 'the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle

them to damages.'"" *Id.*   In this case, Defendant argues Plaintiff has failed to sufficiently allege a breach of contract because he has not specified what specific VA regulations purportedly were violated and, in any event, the regulations only require the foreclosure be conducted in accordance to West Virginia law.   As Defendant maintains it complied with the West Virginia law, Defendant asserts it has not breached the contract.

Plaintiff does not dispute that neither the contracts nor West Virginia law require a loan modification.   However, Plaintiff argues that the VA has promulgated regulations to limit foreclosures of loans it has guaranteed and Defendant did not comply with those requirements. Plaintiff quotes from the VA Guaranteed Loan and Assumption Policy Rider, which provides, in part:

> If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender.   Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to confirm such instruments to said Title or Regulations.

*VA Guar. Loan and Assumption Policy Rider*, at 2, ECF No. 4-1, at 15.   Specifically, Plaintiff cites 38 U.S.C. § 36.4350(f), (g), and (h), which requires, *inter alia*, Defendant to send Plaintiff a letter outlining his loss mitigation options after he fell behind on his payments and, under certain

-6-

circumstances, have a face-to-face meeting with Plaintiff.   Likewise, 38 C.F.R. § 36.4319 provides incentives to servicers to engage in loss mitigation options in lieu of foreclosure, and 38 C.F.R. § 36.4315 expressly allows a loan modification under certain circumstances if it is in veteran's and the Government's best interest.   Plaintiff also cites a Servicer Guide for VA guaranteed loans, which contains similar loss mitigation considerations.[1]   Plaintiff states that all these requirements are incorporated into the contract, and Defendant violated the contract by stating he could not receive a loan modification because he had a VA loan; by telling him to stop making payments rather than placing him on a repayment plan; by not timely evaluating the loan and considering him for loss mitigation and, instead, placing him in foreclosure; and by refusing to allow Plaintiff to apply for a compromise sale because Defendant had started foreclosure. Moreover, Plaintiff asserts Defendant violated his right to reinstate and failed to exercise its discretion in good faith by refusing his payment; telling him to stop making payments; informing he was qualified for loan modification, and then denying the modification; providing him conflicting, inconsistent, and inaccurate information about his account; refusing to consider a short sale; and never providing him a written explanation of why loss mitigation was denied.

Defendant responds by asserting that the VA regulations and the handbook are permissive in nature, not mandatory, and the VA Servicer Guide is not binding. *See VA Servicer Guide*, at 4 ("This manual does not change or supersede any regulation or law affecting the VA Home Loan Program.   If there appears to be a discrepancy, please refer to the related regulation or

---

[1] U.S. Dept. of Veterans Affairs, VA Servicer Guide 6 (July 2009), *available at* http:www.benefits.va.gov/homeloans/docs/va_servicer_guide.pdf.

law."); *see also* 38 C.F.R. § 36.4315(c) (stating "[t]his section does not create a right of a borrower to have a loan modified, but simply authorizes the loan holder to modify a loan in certain situations without the prior approval of the Secretary" 38 U.S.C. § 36.4315(c)).   Thus, Defendant argues they establish no affirmative duty for it to act.   In support of its position, Defendant cites several older cases which held certain regulations issued by the VA and other governmental agencies do not have the force and effect of law.[2]

However, upon review of those cases, the Court finds that they generally involve situations in which the plaintiffs were attempting to assert a cause of action based upon the regulation itself, rather than as a breach of contract claim.   An action based on a contract involves a much different legal theory than one based solely on enforcement of a regulation apart from a contractual duty.   Indeed, Plaintiff cites a number of comparable mortgage cases in which courts permitted homeowners to pursue claims against lenders based upon regulations issued by the Federal Housing Authority (FHA) where it was alleged that the parties contractually agreed to

---

[2]*See First Family Mortg. Corp. of Fl. v. Earnest*, 851 F.2d 843, 844-45 (6th Cir. 1988) (finding that mortgagors could not state a cause of action based on VA publications against the VA for allegedly failing to monitor lender servicing of VA-backed loans); *Bright v. Nimmo*, 756 F.2d 1513, 1516 (11th Cir. 1985) (rejecting the plaintiff's argument that he has an implied cause of action against the VA or lender based upon the VA's manual and guidelines); *United States v. Harvey*, 659 F.2d 62, 65 (5th Cir. 1981) (finding that the VA manual did not have the force and effect of law by itself and it was not incorporated into the promissory notes or deeds to support a contract claim); *Gatter v. Cleland*, 512 F. Supp. 207, 212 (E.D. Pa. 1981) (holding "that the decision to implement a formal refunding program is one that squarely falls within the committed to agency discretion exception [of the VA] and is not subject to judicial review" (footnote omitted)); and *Pueblo Neighborhood Health Ctrs., Inc. v. U.S. Dep't of Health and Human Serv.*, 720 F.2d 622, 625 (10th Cir. 1983) (finding a pamphlet issued by the Department of Health and Human Services, referred to as a Grant Application Manual, was not the product of formal rule-making and did not have the force and effect of law).

comply with those regulations.   As explained by the Court in *Mullins v. GMAC Mortg., LLC*, No. 1:09-cv-00704, 2011 WL 1298777, \*\*2-3 (S.D. W. Va. Mar. 31, 2011), plaintiffs, who allege a straightforward breach of contact claim, "are not, as defendants would have the court believe, suing to enforce HUD regulations under some vague and likely non-existent cause of action allowing a member of the public to take upon himself the role of regulatory enforcer.   These two theories of recovery are distinct and unrelated," and the Court held the plaintiffs could proceed on their express breach of contract claim. 2011 WL 1298777, \*3.[3]   Upon review, this Court is persuaded that the same reasoning controls here.   Therefore, the Court will not dismiss Plaintiff's contract claim based upon Defendant's argument that the regulations and handbook do not have full force and effect of law because Plaintiff has alleged the contract incorporates the limitations set by the regulations. *See Compl.*, at ¶22 ("The contract provides that Defendant's rights upon the borrower's default are limited by Title 38 of the United States Code and any regulations issued thereunder.").

Defendant further argues, however, that some of the regulations cited by Plaintiff are irrelevant to this case because, for instance, a face-to-face meeting with a borrower is required

---

[3]*See also Kersey v. PHH Mortg. Corp.*, 682 F. Supp.2d 588, 596-97 (E.D. Va. 2010), *vacated on other grounds*, 2010 WL 3222262 (E.D. Va. Aug. 13, 2010) (finding, in part, that the plaintiff sufficiently alleged a claim that the defendant breached an FHA regulation which was incorporated in a Deed of Trust); *Sinclair v. Donovan*, Nos. 1:11-CV-00010, 1:11-CV-00079, 2011 WL 5326093, \*8 (S.D. Ohio Nov. 4, 2011) ("find[ing] that the HUD-FHA regulations concerning loss mitigation are enforceable terms of the mortgage contract between the parties and that Plaintiffs cannot be denied the benefit of these provisions by virtue of the fact of simple default"); and *Baker v. Countrywide Home Loans, Inc.*, 3:08-CV-0916-B, 2009 WL 1810336, \*\*5-6 (N.D. Tex. June 24, 2009) (stating that a "failure to comply with the [HUD] regulations made part of the parties' agreement may give rise to liability on a contact theory because the parties incorporated the terms into their contact").

only under certain circumstances which do not exist in this case. *See* 38 C.F.R. § 36.4350(g)(iii). In addition, Defendant asserts that, in any event, it did not breach the contract because it had no duty to engage in loss mitigation and it otherwise complied with the contract's terms.   The Court finds, however, that whether or not Defendant violated any of the terms of the contract is a matter best resolved after discovery.   Therefore, at this point, the Court finds that Plaintiff has sufficiently alleged a breach of contract claim and, accordingly, **DENIES** Defendant's motion to dismiss the claim.[4]

## B.
## Negligence and Fraud

Defendant next argues that Plaintiff's claim for negligence and fraud in Counts II and III, respectively, are duplicative of his illegal debt collection claim in Count V under the West Virginia Consumer Credit Protection Act (WVCCPA) and cannot survive because Plaintiff fails to allege Defendant owed him a special duty beyond the normal borrower-servicer relationship. Therefore, Defendant asserts Counts II and III should be dismissed.

---

[4]Plaintiff obviously disagrees with Defendant's argument and filed a "Notice of Additional Authority" disputing Defendant's position that the VA regulations require holders to evaluate borrowers for loss mitigation.  Plaintiff cites the Veterans Benefits Administration, Revised VA Making Home Affordable Program, Circular 26-10-6 (May 24, 2010), which states, in part: "Before considering HAMP-style modifications, servicers must first evaluate defaulted mortgages for traditional loss mitigation actions cited in Title 38, Code of Federal Regulations, section 36.4819 (38 CFR § 36.4819); i.e., repayment plans, special forbearances, and traditional loan modifications. . . . If none of the traditional home retention loss mitigation options provide an affordable payment, the servicer must evaluate the loan for a HAMP-style modification prior to deciding that the default is insoluble and exploring alternatives to foreclosure." (Available at http://www.benefits.va.gov/HOMELOANS/circulars/26_10_6.pdf).

In *Bailey v. Branch Banking & Trust Co.*, Civ. Act. No. 3:10-0969, 2011 WL 2517253 (S.D. W. Va. June 23, 2011), this Court held that the West Virginia Supreme Court in *Casillas v. Tuscarora Land Co.*, 412 S.E.2d 792 (W. Va. 1991), made it clear a plaintiff can pursue claims under the WVCCPA and common law at the same time. 2011 WL 2517253, *3. The Court reasoned that "[i]t would be contrary to both the legislative intent of the WVCCPA and the whole crux of *Casillas* if the Court were to preclude consumers from bringing actions for violations of the WVCCPA and common law merely because the claims are based upon similar facts." *Id.*   The Court found that "[n]either the WVCCPA nor *Casillas* makes a consumer choose between the two options.   A consumer clearly can choose to pursue both avenues provided "separate" claims are set forth in a complaint." *Id.*

However, under West Virginia law, a plaintiff "cannot maintain an action in tort for an alleged breach of a contractual duty." *Lockhart v. Airco Heating & Cooling*, 567 S.E.2d 619, 624 (W. Va. 2002) (footnote omitted).   Rather, "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law *because of the relationship of the parties*, rather than a mere omission to perform a contract obligation." *Id.* (emphasis added). Whether a "special relationship" exists between the parties beyond their contractual obligations is "determined largely by the extent to which the particular plaintiff is affected differently from society in general." *Aikens v. Debow*, 541 S.E.2d 576, 589 (W. Va. 2000).   "In the lender-borrower context, courts consider whether the lender has created such a 'special relationship' by performing services not normally provided by lender to a borrower." *Warden v. PHH Mortgage Corp.*, No. 3:10-cv-00075, 2010 WL 3720128, at *9 (N.D. W. Va. Sept. 16. 2010

(citing *Glascock v. City Nat'l Bank of W. Va.*, 576 S.E.2d 540, 545-56 (W. Va. 2002) (other citation omitted)).

Here, Plaintiff's negligence claim is quite simple.   He alleges that, where "Defendant engaged in significant communications and activities with Plaintiff[] and the loan, Defendant owed a duty to Plaintiff to provide him with accurate information about his loan account and its obligations and rights thereunder." *Compl.*, at ¶27.   Next, Plaintiff asserts "Defendant[] breached that duty by instructing Plaintiff not to make payments, advising Plaintiff that he would receive a loan modification, and then instead allowing arrears to accrue for months and ultimately denying Plaintiff[] assistance and pursuing foreclosure." *Id*. at ¶28.   Upon review of these allegations, the Court finds Plaintiff has failed to allege any positive legal duty beyond Defendant's purported contractual obligations.   There is nothing about these allegations that creates a "special relationship" between the parties.   Indeed, a duty to provide accurate loan information is a normal service in a lender-borrower relationship.

In support of their claim Plaintiff relies, *inter alia*, on *Glasock v. City National Bank of West Virginia*, 576 S.E.540 (W. Va. 2002), where the West Virginia Supreme Court found that a special relationship existed between a lender and the borrowers.   In *Glascock*, the bank maintained oversight and was significantly involved in the construction of the borrowers' house. The bank possessed information that there were substantial problems with the house, but it failed to reveal those problems to the borrowers. 576 S.E.2d at 545.   The West Virginia Supreme Court found that the bank's significant involvement in the construction created a special relationship

-12-

between the parties which carried "with it a duty to disclose any information that would be critical to the integrity of the construction project." *Id*. at 546 (footnote omitted).

To the contrary, Plaintiff's negligence claim in this case rests merely on the fact Defendant had a duty to provide him accurate information about the loan and failed to do so. Plaintiff has failed to sufficiently allege any facts which support a special relationship between the parties as existed in *Glascock*.   Therefore, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's negligence claim in Count II.

Turning next to Plaintiff's fraud claim, Defendant argues the claim must be dismissed because it fails to meet the heightened pleading standard found in Rule 9(b) of the Federal Rules of Civil Procedure.   Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).   Under this heightened pleading standard, a plaintiff is required to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)) (internal quotation marks omitted).   In other words, the plaintiffs must describe the "'who, what, when, where, and how' of the alleged fraud." *Id*. (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (other citation omitted)).

-13-

In his Complaint, Plaintiff alleges that he had trouble making his mortgage payments around 2009. *Compl*, at ¶6.   When he was approximately two months behind on his payments, Defendant informed him that he qualified for a loan modification, but he needed to complete the necessary paperwork to have it finalized. *Id*. at ¶7(a).   "At this time," Defendant also informed Plaintiff not to make any more payments until the modification was finalized. *Id*. at ¶7(b).   About eight months later, Defendant told Plaintiff that he did not qualify for a modification, but Defendant instructed him to submit documentation for another modification. *Id*. at ¶13.   After approximately six more months passed, Plaintiff was notified again that he was being denied assistance. *Id*. at ¶14.   Plaintiff further alleges that, before May of 2012, Defendant never gave him "a written decision on his loan modification applications or any explanation for why he had denied him for assistance, other than its statements by telephone that he did not qualify for assistance because he had a VA loan." *Id*. at ¶18.

In addition to these alleged facts, Plaintiff specifically states in his cause of action for fraud that "[i]n or around 2009," Defendant told him to stop making payments and it would modify his loan rather than pursue foreclosure. *Id*. at ¶31.   Plaintiff asserts these "representations were false and material," and they were made knowingly, recklessly, and/or intentionally. *Id*. at ¶¶32-33.   Plaintiff further claims he detrimentally relied upon these misrepresentations by stopping his payments and not attempting reinstatement, after which Defendant sought foreclosure. *Id*. at ¶¶34-35.

-14-

In considering these allegations, the Court is mindful of the fact it should be hesitant "to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).   Here, the Court finds that Plaintiff adequately alerts Defendant as to "the time, place, and contents of the false representation[.]" *U.S. ex rel. Wilson*, 525 F.3d at 379 (internal quotation marks and citation omitted).   Plaintiff clearly alleges the fraudulent activity consisted of Defendant instructing him to stop making payments and assuring him he would receive a loan modification instead of foreclosure.   He also asserts the representations were made over the telephone and occurred in 2009, when his payments were two months in arrears, and before Defendant returned his payment. In addition, Plaintiff states that he continued to call Defendant approximately once a week and was assured that it would not proceed with foreclosure. *Compl.*, at ¶12(a), (b), and (c).   Given this information, Defendant should be able to prepare its defense based upon the allegations made.   In addition, the allegations provide enough information that Defendant also should be able to identify and review its customer service notes, call logs, account records, and any phone recordings it may have during the specified time period.   Thus, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for fraud.

### C.
### Estoppel

Defendant further argues that Plaintiff's claim in Count IV for estoppel must be dismissed.   To maintain a claim for estoppel in West Virginia, a plaintiff must show:

> [(1)] a false representation or a concealment of material facts; [(2)] it must have been made with knowledge, actual or constructive of the facts; [(3)] the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; [(4)] it must have been made with the intention that it should be acted on; and [(5)] the party to whom it was made must have relied on or acted on it to his prejudice.

Syl. Pt. 3, *Folio v. City of Clarksburg*, 655 S.E.2d 143 (W. Va. 2007) (quoting Syl. Pt. 6, *Stuart v. Lake Washington Realty Corp.*, 92 S.E.2d 891 (W. Va. 1956)).  Defendant asserts Plaintiff had actual knowledge via correspondence it sent to Plaintiff that he was not guaranteed loan assistance and loan assistance would not impact Defendant's right to foreclose.  Defendant attached the correspondence to its Motion to Dismiss as Exhibit D.  In addition, Defendant argues that Plaintiff admits to missing two payments before the alleged misrepresentations occurred so he cannot state he relied upon those alleged misrepresentations in failing to make his payments.

"[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.' " *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  In this case, Plaintiff asserts that, "at this point there is no evidence that the letter was actually sent to or received by Plaintiff, nor has Plaintiff had the opportunity to present mailings, call logs, or testimony supporting his claim." *Pl.'s Res. in Opp. to Def.'s Mot. to Dis.*, ECF No. 7, at 16.[5]   Therefore, the Court will not consider

---

[5]In addition, the Court notes that the letter appears undated and Defendant sometimes

-16-

the letter.   Likewise, the Court finds no merit to the argument that Plaintiff's admission that he was two months behind on his loan extinguishes his estoppel claim.   It is clear from the Complaint that Plaintiff's claim is that he relied upon the alleged misrepresentations after he was two months delinquent.   Accordingly, the Court **DENIES** Defendant's motion to dismiss the estoppel claim.

**D.**
**WVCCPA**

Finally, Defendant asserts Plaintiff's claim under the WVCCPA in Count V must be dismissed because it fails to meet the requirements of Rules 8(a)(2) of the Federal Rules of Civil Procedure.   Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).   Defendant argues that Plaintiff fails to meet this requirement because he merely pled a legal conclusion that Defendant engaged in illegal debt collection and he does not plead sufficient factual content to support that conclusion.   In addition, Defendant states it had a contractual right to return Plaintiff's partial payment so returning the payment cannot support a WVCCPA claim.

Plaintiff, however, argues that his claims under the WVCCPA are based on three grounds.   First, Plaintiff asserts Defendant used fraudulent, deceptive, or misleading representations to collect the debt or get information about him, in violation of West Virginia Code § 46A-2-127.[6]   Second, he claims that Defendant used unfair or unconscionable means to collect

---

refers to it as a 2009 letter and sometimes as a 2010 letter.   At the top right-hand side of the letter, there is a statement providing:   "Please complete, sign and return all the enclosed documents by December 5, 2009." Exhibit D, ECF No. 4-4, at 1.

[6]Section 127 provides, in part:   "No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information

the debt, in violation of West Virginia Code § 46A-2-128.[7]   Third, Plaintiff contends that

Defendant's refusal to apply payments to his account violated West Virginia Code § 46A-2-115.

Plaintiff then argues that the first two claims are sufficiently supported in opposition to a motion to

dismiss based upon his allegations that (1) Defendant told him he qualified for loan modification

and would receive one if he completed the requested financial information; (2) Defendant told him

to stop making payments because it would interfere with the modification process, but in reality it

increased the likelihood of foreclosure; (3) Defendant assured Plaintiff it would not foreclose on

his home during the time the loan modification application was being processed; (4) Defendant

ultimately represented it could not modify the loan because it was a VA loan; and (5) Defendant

would not consider a short sale of the house and, instead, proceeded with foreclosure.   Plaintiff

argues that each of these misrepresentations made by Defendant were intended to collect financial

information about him through the modification process or collect the debt via foreclosure.   He

also states the delay and improper refusal of payments greatly increased the amount he was in

arrears, which allowed Defendant to attempt to collect the debt through foreclosure.


Upon consideration of these allegations, the Court finds they are sufficient to state a

claim under the WVCCPA.   As stated by the Honorable Thomas E. Johnston stated in *Koontz v.*

*Wells Fargo, N.A.*, Civ. Act. No. 2:10-cv-00864, 2011 WL 1297519 (S.D. W. Va. Mar. 31, 2011),

West Virginia "§ 46A-2-127 applies to both 'misrepresentations made in collecting a debt' and

---

concerning consumers." W. Va. Code § 46A-2-127, in part.

[7]Section 128 states, in part: "No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code §46A-2-128, in part.

'misrepresentations . . . [made] when obtaining information on a customer.'" 2011 WL 1297519, at *6.  Therefore, allegations that a financial institution misrepresented to the borrower that it would reconsider a loan modification and, thereby, obtained additional financial information from the borrower, are sufficient to state a claim. *Id.*  Likewise, the Court finds the allegations are sufficient to state a claim that Defendant used "unfair or unconscionable means to collect or attempt to collect any claim" pursuant to West Virginia Code §46A-2-128, in part. *Cf. Wilson v. Draper v. Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (stating "Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt" under the Fair Debt Collection Practices Act (citations omitted)).[8]


With respect to Plaintiff's third claim that Defendant illegally returned his payment pursuant to West Virginia Code § 46A-2-115(c), this provision states:

> All amounts paid to a creditor arising out of any consumer credit sale or consumer loan shall be credited upon receipt against payments due: *Provided*, That amounts received and applied during a cure period will not result in a duty to provide a new notice of right to cure; and provided further that partial amounts received during the reinstatement period set forth in subsection (b) of this section do not create an automatic duty to reinstate and may be

---

[8]Defendant asserts that a debt collection does not give rise to a claim under the WVCCPA. Citing *Spoor v. PHH Mortgage Corp.*, Civ. Act. No. 5:10CV42, 2011 WL 883666 (N.D. W. Va. Mar. 11, 2011).  The Court has reviewed *Spoor* and finds that it primarily focused only on the plaintiff's request for a loan modification with respect to her WVCCPA claims.   The district court in *Spoor* stated that the defendant's consideration of the request is not an attempt to collect a debt. 2011 WL 883666, at *7.   In the present case, however, the allegations Plaintiff argues supports his claim extend beyond a mere "request" for a modification.   Moreover, the Court finds that, to the extent *Spoor* is contrary to the reasoning in *Wilson* and *Koontz*, the Court declines to apply it to this case.

> returned by the creditor.  Default charges shall be accounted for separately; those set forth in subsection (b) arising during such a reinstatement period may be added to principal.

W. Va. Code § 46A-2-115(c).  Plaintiff argues that § 46A-2-115(b) defines the reinstatement period as the time "beginning with the trustee notice of foreclosure and ending prior to foreclosure sale," and he made clear it clear in his Complaint that Defendant returned his payment prior to the requesting a trustee notice of the foreclosure sale. *See Compl.*, at ¶¶7 & 10.  Defendant responds by stating that it was within its contractual right to refuse the payment.   However, West Virginia Code § 46A-1-107 makes it clear that, "[e]xcept as otherwise provided in this chapter, a consumer may not waive or agree to forego rights or benefits under this chapter or under article two-a, chapter forty-six of this code."  W. Va. Code 46A-1-107.  Therefore, upon review, the Court finds that Plaintiff's claim is sufficient to survive a motion to dismiss.   Thus, for the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss Count V for alleged violations of the WVCCPA.

**V.**
**CONCLUSION**

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's claims for breach of contract, fraud, estoppel, and violations of the WVCCPA. However, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's negligence claim.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to all counsel of record and any unrepresented parties.

ENTER:        March 14, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE